No. 12043

IN THE SUPREME COURT OF THE STATE OF MONTANA

1971

---

CAROLYN MARIE HUNNEWELL,

Plaintiff and Respondent,

-vs-

ARCHIE RAY HUNNEWELL,

Defendant and Appellant.

---

Appeal from:  District Court of the Tenth Judicial District,
Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

For Appellant:

Dockery and Parrish, Lewistown, Montana.
Loble, Picotte and Loble, Helena, Montana.
Lester H. Loble, II argued, Helena, Montana.

For Respondent:

argued
Robert L. Johnson, Lewistown, Montana.
William E. Berger argued, Lewistown, Montana.

---

Submitted:  October 27, 1971

Decided:  DEC - 9 1971 and
AUG 3 1 1972

Filed:  DEC - 9 1971 and
AUG 3 1 1972

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal by Archie Ray Hunnewell, the defendant, from a judgment entered in the district court of Fergus County following trial to the court, sitting without a jury.

From the record it appears that plaintiff and defendant were married in 1953. The defendant husband is 48 years of age and the plaintiff wife 36 years of age. Three children were born to the couple, a girl now 15, and two sons now 13 and 8 years of age.

The couple moved onto the ranch owned by defendant's father near Danvers, Montana and lived there the whole of their married life up until the time of their separation prior to the divorce.

The defendant has been a rancher all his life. He is 35 to 40 percent permanently disabled of the body as a whole as the result of an accidental injury to his spine sustained in 1965. Since the injury to his spine the defendant's ability to work his ranch has been impaired and it is apparent from the record he will always require assistance to do so.

The record further reveals that for some years there has been a degree of controversy in the household concerning the common facets of domestic life, the disciplining and needs of the children, the condition of the household budget and the degree of socializing and outside interests of the parties.

The record also reveals that the defendant has been refused the exercise of his marital prerogative for over a year and a half, the plaintiff refusing to share the same bedroom

with defendant during that period.

Further, it appears that plaintiff subjected defendant to ridicule in the presence of the children; took extended summer vacations to visit her mother in Seattle and thus absenting herself from the defendant and the ranch operation during the most active season of the year. The circumstances of these complaints about each other resulted in plaintiff filing for a divorce and defendant to counterclaim for the same relief.

Upon the trial plaintiff testified to incidents which happened years before while defendant's testimony was of recent incidents. The court granted plaintiff a divorce, ordered the property divided, provided for custody of the children and allowance for their support. Defendant contests all of these rulings on this appeal.

We have examined the record here with great care in our endeavor to find the evidence which supports the court's finding that defendant was guilty of extreme cruelty. We cannot find it and must therefore hold that the court abused its discretion in this regard since there is a clear preponderance of the evidence against such finding. Conway v. Fabian, 108 Mont. 287, 89 P.2d 1022.

The evidence in this cause does support defendant's counterclaim for a divorce and the court was in error in not so finding and granting a divorce to defendant.

The defendant next raises the issue of the validity of the property settlement ordered by the court. The district court in its findings of fact found that at the time of their marriage

- 3 -

the parties had brought to the marriage about equal amounts of property and that the property since acquired had been acquired through the joint efforts of the parties.

While the record supports the finding of equal initial contribution it fails to support the finding that the after acquired property resulted from either that or the parties joint efforts.

Here the bulk of the ranch property was the land which was in part paid for by crop share but for the most part in the following manner: When the plaintiff and defendant were married they moved onto the Hunnewell ranch under an informal crop sharing agreement with defendant's father. Subsequently a three year lease was signed. Upon the expiration of the lease defendant's father and stepmother entered into a contract for deed with the parties for the sale of the ranch.

While the contract for deed was signed by both the plaintiff and defendant, the deed itself, which was executed contemporaneously, named the defendant as the sole grantee.

The purchase price of the ranch was $50,000 for 1,760 acres, or approximately $29 per acre. The contract further provided that payment would be made on a crop share basis.

Mr. Hunnewell died two years later and included among the assets of the estate was the balance outstanding on the contract of approximately $43,000.

During the probate of the estate, the defendant agreed to relinquish his share in all other assets of his father's estate, which amounted to $35,404.89, and agreed to pay $4,000 to

- 4 -

each of his two sisters in exchange for their interest in the contract. It was in this manner that the ranch was acquired by defendant.

It is a well established principle of law in this state that in determining a property settlement pursuant to the granting of a divorce, the court will consider the contributions made by the parties in acquiring the property in question. Libra v. Libra, ____Mont.____, 484 P.2d 748, 28 St.Rep. 460; and cases cited therein.

It was, then, error for the court to find that the plaintiff had and was entitled to a one-half undivided interest in the ranch. Plaintiff's interest based upon joint effort or contribution was so fractional that the award of the equity in the town house in Lewistown as ordered by the court was amply sufficient to compensate her for her interest in the farm.

Defendants contention that the court erred in ordering child support payments until the children are through college on the basis that it is openended and imposes an obligation greater than defendant's duty at law has merit. While the court expressly provided that such payments were contingent upon their emancipation or further order of the court the children are still quite young and their educational futures most uncertain; and no necessity exists now to make support payments for a longer period than the law provides. The court should await a later appropriate time because defendant's obligation to support his children through college will depend in a large degree upon factors not yet known; the desire and ability of the children

themselves as well as the ability of the defendant to make such provisions at that time. The equity of this provision is then, at this time, premature.

The final assignment of error is to the denial of defendant's request for the custody of the children during the summer months, the court granting him instead reasonable visitation rights.

The record clearly indicates that all the children still have active interests in riding horses, caring for animals, and other ranch life activities. The plaintiff's denial that the defendant was a fit and proper person to have custody of the children as stated in her answer to pertinent interrogatories was that she did not favor joint custody. The children themselves had mixed emotions regarding the same, which is consistent with the trauma of their situation.

We understand events have transpired in this respect since the original trial, and the defendant father not having been found unfit, the court should further consider the children's custody.

The cause should be remanded to the district court for modification of its findings and judgment in conformity with this opinion.

It is so ordered.

_____
Chief Justice

- 6 -

We concur:

_Paul G. Haswell_

_Gene B. Daly_

_Wesley Castles_

Associate Justices

_Thomas Dignan_

Hon. Thomas Dignan, District Judge,
sitting in place of Mr. Justice
John C. Harrison.

Supplemental Opinion on Rehearing

This cause was first submitted on October 27, 1971, on appeal from the district court of Fergus County. The district court had granted a decree of divorce in favor of plaintiff Carolyn Hunnewell, and further ordered that the property acquired during the marriage be divided evenly between plaintiff and defendant. Defendant Archie Hunnewell appealed and on December 9, 1971, this Court reversed the district court ordering the decree of divorce be entered for defendant. In that same opinion we ordered that the property should not be divided evenly between the parties as the evidence in the record did not support the conclusion that each party had contributed equally to the marriage. A petition for rehearing was filed on December 23, 1971, and rehearing was held on June 14, 1972.

From the showing made at the rehearing it became apparent that some changes needed to be made in our original opinion. That portion of the original opinion relating to the decree of divorce and the remanding of the custody of the children to the district court will stand. The statement of facts in the original opinion with the foregoing statement will be sufficient for the purposes of this supplemental opinion.

The necessary change to be made in the original opinion relates to determination of how the property of the marriage is to be apportioned. Originally we held that an award of the equity in the "town house" would be sufficient to compensate Mrs. Hunnewell for her contribution to the marriage. On rehearing it was shown that this equity amounted to approximately $2,000, which is about the amount of money Mrs. Hunnewell contributed to the marriage in the beginning.

- 8 -

While the record does support the conclusion that the bulk of the marital property was obtained by Archie's inheritance from his father and the arrangement made between his sisters, the record also shows that Carolyn Hunnewell did make a contribution to the marriage for which she should be compensated in a greater amount than her original contribution.

It may be true that she did absent herself from the ranch during the peak period of activity, but it is also true that she was present during the remaining time when she carried out the duties and responsibilities expected of a "ranch wife". Archie Hunnewell testified that Carolyn had helped with the calving on the ranch. Carolyn's testimony showed that during her presence at the ranch she did all the cooking, including the canning of garden vegetables and cleaning for the family. She also testified she took part in the children's activities.

To compensate for her contribution we order that Carolyn Hunnewell is to receive the town house in Lewistown outright. The present encumbrance to be assumed by Archie Hunnewell who may either satisfy the mortgage and deliver the property to Carolyn or he may continue to pay the mortgage payments until such mortgage is satisfied. Carolyn Hunnewell is to have immediate possession. This, plus the other property divisions ordered, will fully satisfy any further claims Carolyn Hunnewell may have on the ranch property. She will have no claim to any of the property Archie Hunnewell inherited from his father or any of the machinery or equipment necessary to carry on the ranching operation.

The marital property also includes property, both real and personal, held in joint tenancy. These joint tenancies shall be terminated and the various items of property divided equally between the parties with the exception that Archie is to retain

all interest in the REA stock originally acquired by his father. Carolyn Hunnewell shall be required to execute a crop share lease to Archie on her interest in the real property, formerly held in joint tenancy, annually so long as Archie complies with the conditions of said lease, any renewal and extension thereof. This lease shall be made on the usual terms of such leases in the area, and if there be dispute between the parties as to such "usual terms" the district judge shall make such determination.

Should Carolyn Hunnewell choose to sell her interests Archie Hunnewell shall have the option to meet any and all bids and terms of such contemplated sale, and in any such sale the down payment shall not be more than 25% of the sale price, the balance to be paid in five equal installments, one installment due each year for a period of 5 years. The purpose of this provision is to permit Archie to continue to ranch and farm the premises without being met with a sudden emergency to raise money, the Court being aware that all the property is presently mortgaged and such an emergency demand might cause a hardship.

As to the grazing land which would not be included in a crop share lease, the same general conditions as heretofore outlined shall be contained in such lease and the compensation for the annual use for grazing purposes shall be the "usual terms" of grazing leases in the area, and if there be dispute between the parties the district judge shall set such compensation.

The record reveals a dispute exists over the distribution of the remaining personal property held by the parties. So that an equitable solution may be made we are referring this matter back to the district court to determine the amount of such personal property in the marriage and which of the parties has possession,

and then make an equitable division.

In making this division that portion of the personal property which consists of antiques and heirlooms should be distributed to the party whose family originally owned the article. The property interests of the children should also be considered in making such distribution.

As to the cattle, Carolyn should be given 10 head of sound cows, free and clear of any encumbrance. They shall be picked by the parties, Carolyn having the first pick, then Archie, and so on until 10 head have been selected, and they shall be rebranded by Carolyn, unless she desires to sell in which event Archie shall have the right to meet the bid of any commercial cattle buyer agreed upon by the parties and thereby retain ownership thereof.

Should the district judge desire that these settlement provisions be handled otherwise than here set forth but in the same vein, he is privileged to appoint a Master who shall see that they are carried out.

We find no merit in the contention that the petition for rehearing was not filed within time, extensions of time are often granted by the Court to counsel in person, or by phone, without the necessity of a formal order.

The cause is remanded to the district court for further proceedings in conformity with what has been said here and in the original opinion heretofore issued.